IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:25CR108-1 |
| | : | |
| RONNIE JAY OXENDINE | : | |

FACTUAL BASIS FOR A GUILTY PLEA

NOW COMES the United States of America, by and through Randall S. Galyon, United States Attorney for the Middle District of North Carolina, and states that the factual basis for a guilty plea is as follows:

Beginning in or around late-July, 2024, and continuing through August 2, 2024, the defendant, Ronnie Jay Oxendine (Oxendine), agreed and conspired with Tina Brown Cooper (Cooper) and Ryan Wesley Routh (Routh) to sell and dispose of a firearm to a prohibited person (Routh). Oxendine sold the firearm to Routh at the request of Cooper, who was Oxendine's employee at the time.

In or around mid-July 2024, Cooper asked Oxendine if he had any firearms for sale. On July 27th, Cooper sent a text message to Oxendine informing him that Routh would be arriving in Greensboro, North Carolina, on July 28th and asked if Oxendine would be available to meet in the afternoon. Oxendine responded that he was at the beach but would call Cooper when he got back into town.

Later, Cooper specifically asked Oxendine if he had an AK-47 for sale. Oxendine agreed to sell a similar firearm: a Chinese-made SKS rifle. Cooper then requested that Oxendine bring the SKS rifle to his place of business: Oxendine and Son Roofing Company in Greensboro.

On August 2, 2024, Cooper called Oxendine, who confirmed he was at his place of business and had the SKS rifle with him. Cooper, who was at the time driving with her adult daughter, arranged to meet Routh at Oxendine and Son Roofing Company.

Oxendine was outside of the business when Cooper, her daughter, and Routh arrived. Oxendine asked Cooper why Routh was there; Cooper explained that the SKS rifle was actually for Routh. Oxendine handed the SKS rifle to Routh. Routh paid Oxendine $350 in cash for the SKS rifle and paid Cooper $100 in cash for arranging the sale.

On September 22, 2024, Federal Bureau of Investigation (FBI) agents interviewed Oxendine in Climax, North Carolina. Oxendine advised he had met Routh in the early to mid-1990s. Oxendine and Routh both owned roofing companies and would occasionally cross paths at hardware supply stores. Oxendine and Routh were not friends. However, Oxendine falsely told agents that Routh had pawned an SKS rifle to Oxendine in the early 1990s for approximately $300.

During the interview, Oxendine told agents he had learned of Routh's criminal history from Cooper. Oxendine knew Routh had been arrested in Greensboro, North Carolina, for possession of a weapon of mass destruction. Although Oxendine knew Routh had been arrested, he told agents he did not know if Routh was ultimately convicted. Oxendine also learned from Cooper that Routh had left Greensboro and moved to Hawaii. Oxendine knew Cooper had previously worked for Routh's roofing company.

Oxendine told the agents that on August 2, 2024, Cooper called him and requested to purchase an AK-47 from Oxendine. Oxendine did not want to sell his AK-47 and instead offered to sell Cooper an SKS rifle. Oxendine explained to Cooper that an SKS rifle shot the same round as an AK-47. Oxendine told agents he believed Cooper was going to give the firearm to her grandson.

Oxendine recounted that Cooper and Routh arrived at Oxendine's place of business at approximately 10:00 a.m., on August 2, 2024. Oxendine was surprised to see Routh; Oxendine had not spoken to Routh in approximately 10 years. Oxendine asked Cooper why Routh was there; Cooper explained to Oxendine that the firearm was for Routh, not Cooper. Oxendine nevertheless agreed to proceed with the sale. Oxendine asked Cooper why she did not tell him the firearm was for Routh. Cooper responded that she though Oxendine would have an issue with Routh being the recipient of the firearm.

3

Oxendine advised the agents that he learned of Routh's September 15, 2024 attempted assassination of then-former President Trump from his sister. Oxendine explained that he contacted Cooper and told her about the assassination attempt. Oxendine said that Cooper told him that she was going to delete all her text messages relating to Routh. Oxendine also told interviewing agents that Cooper had instructed him in text messages to deny any knowledge and to refuse to cooperate with the FBI.

During Oxendine's interview, agents admonished him about the importance of telling the truth, at which point Oxendine admitted he had lied about receiving an SKS rifle from Routh in the 1990s. Oxendine further admitted he told the FBI this in an attempt to minimize his role in Routh's purchase of the SKS rifle.

Following Oxendine's interview, FBI agents documented the firearms that Oxendine had in the home. Oxendine also gave written consent to the FBI for the search of his cellular telephone. Realizing Oxendine collected and sold firearms, agents asked if he possessed anything that would be commonly known as illegal. They cited machineguns and short-barreled rifles as possible examples. Oxendine immediately advised agents he possessed a short-barreled shotgun that he stored inside a box in his storage building. Oxendine escorted agents into his storage building, where the short-barreled shotgun was stored.

4

FBI Special Agent Eric Nye, a firearms expert, examined the short-barreled shotgun. He determined that the firearm, a Stevens 16-gauge model #940E (the short-barreled shotgun), was prohibited because the barrel was shorter than eighteen inches, at which point Oxendine consented to its seizure.

Special Agent Nye confirmed with an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives that this firearm was not registered with the National Firearms Register and Transfer Record (and, indeed, had no serial number, so registration would have been impossible). He further test-fired the short-barreled shotgun and it functioned as designed.

This the 29th day of May, 2025.

        Respectfully submitted,

        RANDALL S. GALYON
        ACTING UNITED STATES ATTORNEY

        /S/ JOANNA G. MCFADDEN
        Assistant United States Attorney
        Deputy Chief, Criminal Division
        NYSB No.: 4500948
        NCSB No.: 60561
        United States Attorney's Office
        Middle District of North Carolina
        101 S. Edgeworth St., 4th Floor
        Greensboro, NC  27401
        Phone:  336/333-5351

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

        Respectfully submitted,

        RANDALL S. GALYON
        ACTING UNITED STATES ATTORNEY

        /S/ JOANNA G. MCFADDEN
        Assistant United States Attorney
        Deputy Chief, Criminal Division
        NYSB No.: 4500948
        NCSB No.: 60561
        United States Attorney's Office
        Middle District of North Carolina
        101 S. Edgeworth St., 4th Floor
        Greensboro, NC  27401
        Phone:  336/333-5351